If it pleases the Court, good morning. My name is Art Muegler. I'm the appellant pro se in this action. You are a lawyer? Yes, I am. Okay. And, Judge, with the Court's permission, I would like to split my time eight and two. That's fine. Thank you. Without waiving the points made in my opening brief and reply brief, I'd like to address today two fundamental determinations which I suggest as the reasons why the bankruptcy court and district court committed prejudicial error in granting summary judgment in this case on a collateral estoppel theory. First, I want to address the issues presented by the prior case verdict directing instructions, and in particular, I want to argue that the prior case verdict directing instruction did not unambiguously and necessarily decide that the debtor made a false representation or actual fraud. And secondly, I want to address the Dela Cruz issue of whether a benefit, indirect or direct, is required under the fraud non-discharge exception. Now, first of all, I believe we're guided by the principle that was announced in Archer v. Warner, 538 U.S. 314, 2003, that Congress intended the relevant determinations of whether a debtor rises out of fraud to take place in the bankruptcy court and not to force it to occur earlier in state court at a time when non-dischargeability concerns are not directly an issue and neither party has a full incentive to litigate them. That's a quote out of the Archer case, which I believe is applicable here. The court is aware, based upon the briefs of the parties, that Missouri substantive law applies and that the Missouri doctrine of collateral estoppel is the appropriate doctrine in this case. The court is probably also aware that Missouri requires, before it will apply the doctrine, that the prior case unambiguously and necessarily decided the issue presented in the current case before it will apply the doctrine of collateral estoppel. Your Honor, please excuse my voice. A few years ago, I had some chemo and radiation on laryngeal cancer that left my. We can hear you just fine. Fine, thank you. With respect to the jury instructions, they're set out in my opening brief at pages, well, the instruction itself is set out at page 27. These are the jury instructions in the underlying? In the prior case, yes. And, Judge, my basic contention here is that the paragraph first lists the so-called intentional representations. There are several of them, four or five of them. But then paragraphs 2, 3, 4, 5, and 6, which give the other elements of the fraud in Missouri, are phrased in one or more terminology. And that's the mischief of this instruction for purpose of the collateral estoppel bankruptcy rules. I have the substance of the instruction in front of me. And it says that you made some statements with the intent that folks rely upon them. That's paragraph 1, right? Yes. And that element 2 is that one of those was false. This is what the jury would have to find in order to return a verdict favorable to the other side. Yes. But if you notice ---- And let me go on. Sure. That you knew the representation was false. Yes. That the representation was material to these folks' investment, that they relied upon your representation, and as a direct result, they were damaged. Yes. Why doesn't that fit the NARA rechargeability test? Well, it doesn't fit for this reason, and I highlight that reason at page 31 and 32 with what I contend is a corrected verdict director that would have met the unambiguous and necessarily decided issues. As submitted to the jury, for example, in instruction 1, in the prior ---- the instruction as given, the jury could have believed paragraph 1A that I made that representation. But they could ---- maybe they said, no, he didn't make B, C, or D, or E in paragraph 1. Now, if you look second paragraph of this verdict director, you'll see any one or more of the representations submitted in paragraph 1st was false. Well, what if they concluded that it was B, C, D, and E, which was made by my client in a prospectus? As submitted, that would be satisfied. Third, that I knew one or more that they were false. Well, maybe I knew that my client's representation in the contract was false. Fifth and sixth and so forth. If you look at the instruction ---- Just a second, counsel. You represented yourself in the underlying proceedings? Yes, I did. Okay. And did you request special jury interrogatory? I did not because it's the practice, as Judge Lay knows, in the district ---- Eastern District Court of the Eastern District of Missouri to submit verdict directors in the form of what we call Missouri approved instructions, MAIs. And this is the MAI modified for fraudulent misrepresentation, the one that was submitted. Okay. So the jury was never asked specifically to say this statement was false, this statement was made, and it was false? That is exactly right. And that's the mischief of this instruction is that if I ---- if the jury believed I represented first A but not the remainder of them, and first A was true, but my client made first B, C, D, or E, any one or more of those, they could find me liable under this instruction as long as they relied upon it. And the mischief of the instruction is highly demonstrated, Judge, and I urge the court to look at my modified instruction on pages 31 and 32 of the opening brief. If the modified instruction would have been given, I would not have an argument that collateral estoppel should not have been applied because the jury instruction was ambiguous or didn't necessarily decide. If the modified instruction would have been given and if a judgment would have been rendered, there's no question I would have been stuck with an actual fraud, fraudulent misrepresentation judgment. It's my position that one can fairly say, one can fairly say that it certainly is ambiguous under the instruction as given whether or not I made a false representation. My argument on this point, because it looks like I'm going quick, is set out in that point of my brief. I do want to briefly mention the benefit rule, and that is I believe that this court's decision in Ray Arm, 87 Federal 3rd, 1046, 1996, is correct even after De La Cruz. I believe that De La Cruz provides a test, and the test is that if we're talking non-dischargeability and fraud, there's two issues involved. First one, qualification for non-discharge, and then secondly, if qualified, how much is non-dischargeable. I submit to the court that if you read De La Cruz and the language that I've cited in the brief and all the case law that's come forth on that, you will see that on the qualification side, the debtor must receive some direct or indirect benefit, however minimal, from the fraud, if you will. And having done that, no matter how great the damage is and how little the actual benefit, the debtor is responsible and non-dischargeable for the whole boatload. In this case, it's undisputed. I didn't get a nickel benefit from my client or money from a Benning or Harry. The district court even made a finding that the benefit in the prior case was never decided. I see that I said stop, and so I'll stop. Thank you, Judge. Thank you, counsel. Counsel. Stoeckel. Good morning, Your Honor. Your Honor, Chad Stoeckel on behalf of Appellees. I would like to start off discussing the jury instructions. I'd like to note that Appellees are a little bit hamstrung here. We do not have the opportunity to develop the record properly because Mr. Megler did not raise this point until his appeal to this Court. He did not raise it in the district court below in his opening brief, waiting instead until his reply brief. Therefore, we have not had a chance to supplement the record with Mr. Megler's appeal from the Eighth Circuit Court of Appeals arising from the underlying case. If we had, we could show you that at point 14 on pages 64 and 65 of Appeal No. 962572, Mr. Megler made this exact same argument to the Eighth Circuit Court of Appeals, that these instructions allowed the Court to find that Megler, to find that there was a, you know, it was not unambiguously decided that maybe he made Statement A and then later on they were using Statement B and later on they were using Statement C. And the Eighth Circuit Court of Appeals squarely rejected that. And that's in the record at pages 1013 and 1026. He's already had his opportunity to make this argument and it's already been decided against him. The Eighth Circuit found that the jury instructions complied with Missouri law. The essential elements of fraud under Missouri law are a representation, its falsity, its materiality, the speaker's knowledge of the falsity or his ignorance of the truth, the speaker's intent that his representation should be acted upon by the hearer and in the manner reasonably contemplated, the hearer's ignorance of the falsity of the representation, the hearer's reliance on the truth of the statement and approximately caused injury. Nowhere in that statement of law is there any ambiguity about a Statement A, a Statement B, a Statement C or anything like that. And the Court found that the jury instructions complied with those standards. Furthermore, the jury instructions track Missouri-approved Instruction 2305, which further indicates that they are correct as a matter of Missouri law. Moving on to the second point that Mr. Megler raised regarding the receipt of benefits rule, it is Appellee's position that Mr. Megler's argument is against the plain language of Cohen v. De La Cruz. At page 221, 523 U.S. 221, the Court stated, 523A2A is best read to prohibit the discharge of any liability arising from a debtor's fraudulent acquisition of money, property, et cetera, including an award of treble damages for the fraud. There is no mention of any receipt of benefits rule. Two courts of appeals, two circuit courts of appeals have also come forth with language which supports our interpretation. The first is the Fifth Circuit Court of Appeals in matter of M.M. Winkler, which can be found at 239F3rd746. In there, the Court stated, Thus, the plain meaning of the statute is that debtors cannot discharge any debts that arise from fraud so long as they are liable to the creditor for the fraud. That's at page 749 of the opinion. Mr. Megler was found liable of fraud in the District Court of Missouri. Therefore, he cannot discharge any debts that arise from that fraud. Is it correct that he got no benefit? No, that is incorrect. He was paid some attorney's fees. The District Court did note that. I don't have a cite for you. I'm sorry. And it's an opinion. But he didn't receive all of his attorney's fees. I think they might have stiffed him on some of them. But he did receive attorney's fees for his representation of concepts communication. And the third case I would cite is the case of Inree Pleasance, which may be found at 219F3rd372, and that's from the Fourth Circuit. And Pleasance examines the receipt of benefits theory sort of tangentially and states that, citing Cohen, this language is broad enough to encompass a situation in which no portion of a creditor's claim was literally transferred to the fraudulent debtor. So you have the United States Supreme Court, the Fourth Circuit Court of Appeals, and the Fifth Circuit Court of Appeals all stating that because of Cohen, the receipt of benefits test, had there ever been one, has been abrogated. We'd like to move on to our discussion regarding 520 11 U.S.C. 523A6. Mr. Megler has argued that the court, that the underlying judgment does not meet the standards for willful and malicious conduct as required by the Geiger decision. We state, appellees argue that you should look to the law of the underlying  If the tort complies with the standards for willful and malicious injury, then the entire debt is nondischargeable, including the punitive damage, the punitive damages which were awarded. In the Ninth Circuit, a willful and malicious injury arises from an injury caused by a deliberate act of debtor undertaken with subjective motive to cause harm or under circumstances where there is an objective or substantial certainty of harm. That comes from Inree Chablowski, 246 Bankruptcy Reporter, 639 at 645. Under Missouri law, once again, the elements of fraud are a representation, its falsity, its materiality, the speaker's knowledge of the falsity or ignorance of the truth, intent that it should be acted upon, the hearer's ignorance of the falsity, the hearer's reliance, the hearer's right to rely, and the hearer's consequent and approximately caused injury. In there, you have a deliberate act of debtor, as they have to make a representation with the knowledge of the falsity and the intent that it be relied upon. You also have a subjective motive to cause harm or under circumstances where there can be an objective or substantial uncertainty of harm, as the speaker intends that its representation should be acted upon by the hearer. Debtor had argued in his brief that because Missouri law is either actual or constructive knowledge on the part of someone in fraud cases, there is no identity of issues in this case. That argument ignores the jury instructions in this case, which explicitly required that Defendant Megler knew that his representations were false. The jury in this case decided, as a matter of law, that the debtor had actual knowledge of his fraud. Therefore, the constructive knowledge element that Mr. Megler attempts to bring in is not well taken. In the present case, the punitive damages arise directly from the debtor's conduct that formed the basis of the jury's award for actual damages. And we found a case. We couldn't find a Ninth Circuit case on point, so we found an Eighth Circuit case on point on this. It's Inree Scarborough, 171 F. 3rd, 638, which states that once the underlying tort case has been found to comply with the willful and malicious requirement of Geiger, then the punitive damages, the entire debt arising therefrom, is not dischargeable. Okay. And Mr. Megler has also has his share of disputes with the adjudication below, saying that it was not a final adjudication on the merits. That point is also. This is something he didn't raise in his argument. If you want to talk about it, you can. Well, Your Honors, I'd just like to – I would like to just have my chance to discuss it. So if you have any questions, you can fire away. I noticed throughout these proceedings there's so much back-and-forth give and take. And the Court, I believe over in Missouri, gave sanctions here. Yes. And striking the pleadings and reentering the judgment of liability. And has there ever been any disciplinary proceedings taken here? I do not know. We did not represent the appellees at the underlying trial. We started representing them around the time of the bankruptcy. I don't know if opposing counsel ever sought any disciplinary action with the Missouri  All right. Mr. Megler argues that there was not a final adjudication on the merits because it was similar to a default judgment because it was precluded from offering as evidence that he failed to disclose during the discovery process. That point is wrong. Under Missouri Supreme Court Rule 74.05, a default judgment can be entered upon proof of damages or some other entitlement relief. Once an answer or some other response to a pleading has been filed, however, the plaintiff must put on their evidence and meet their requisite burden of proof in order to prevail at trial. That is exactly what happened here. Mr. Megler answered the complaint, took part in the discovery process, though he didn't actually produce any documents and interrogatories or answer any deposition questions, and took part in the trial, cross-examining witnesses and making arguments to the Court. The jury instructions were submitted to the jury, and the plaintiffs had to prevail on each element of their claim. There can be no doubt that this matter was actually adjudicated on the merits. And finally, Mr. Megler argues that he was not afforded a full and fair opportunity to litigate this issue in the court below, and states that the procedural opportunities that he would have here are different than those that he had below. That is not well taken as well. You need to focus. The proper focus is did he avail himself of the opportunity. I point to Inree Jones, 287, Bankruptcy 188, and Inree Mirenuk, 155, Bankruptcy 33, as well as Inree Daley, 47, F3rd 365. As supporting those points, I see the fastest 10 minutes ever is up. Thank you, Your Honors. Thank you. You are out of time, Mr. Megler, but we'll give you a minute if you want to reply. Thank you, Judge. I'll try to shotgun it. With respect to the waiver point on the instruction, I refer the Court to pages 9 through 14 of my reply brief, which shows all the actions I've taken in this case raising this identical point that's before you today. I think the argument we heard from your opponent was that you did not raise the instruction issue to us until your reply brief. What say you? Oh, no. It's in my opening brief, Judge. And, no, he's saying the first time it was raised was on appeal to this Court. And I'm saying if you look at reply brief 9 to 14, you'll see that I've raised it throughout in bankruptcy court, district court, and here. Well, he also is saying that this case, this issue was raised to the Supreme Court of the state and that, therefore — Well, he said that — that was going to be my next shotgun point, Your Honor. He said that these instructions have been reviewed and no error found by the Eighth Circuit Court of Appeals, which is correct. But as in the Archer versus Warner decision, which I started out with, that review in the Eighth Circuit dealt with whether there was substantial evidence to support the instruction and whether that fairly set out Missouri law. It certainly didn't address the issue of whether it was actual fraud or willful injury in discharge in bankruptcy. And so, as in Archer, that is a fallacious argument that it's been decided previously in the Eighth Circuit in this case. That's just not true. Use the minute, the extra minute that I gave you. Thank you very much. Thank you, Judge. The case just argued will be submitted for decision. We'll proceed to the next case on the argument calendar.
judges: Lay , B. Fletcher, Hawkins